IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 15, 2010 Session

## IN RE: THE ESTATE OF MARY PAULINE STUMPE SCHORN, DECEASED

**Appeal from the Chancery Court for Anderson County**
**No. 04PB0077     William E. Lantrip, Chancellor**

---

**No. E2010-00935-COA-R3-CV - Filed March 31, 2011**

---

In March of 2004, the Trial Court entered an order to probate the Last Will and Testament of Mary Pauline Stumpe Schorn ("Deceased") and appointed John H. Schorn the Personal Representative of Deceased's estate ("Personal Representative"). On April 13, 2010, the Trial Court entered an order that, *inter alia*, ordered the Personal Representative to "compile a complete list of where the estate monies are and what has been spent since the last accounting was provided to the beneficiaries …," within thirty days, and to close and settle the estate within ninety days. The Personal Representative appeals the April 13, 2010 Order to this Court. We hold that the order appealed from is not a final judgment, and, therefore, we lack jurisdiction to consider the appeal. The appeal is dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, J.J., joined.

Donald K. Vowell, Knoxville, Tennessee, for the appellant, the Estate of Mary Pauline Stumpe Schorn, John H. Schorn, Personal Representative.

Ann Mostoller, Oak Ridge, Tennessee, for the appellees, Mary V. Schorn, and Charles A. Schorn.

# OPINION

## Background

The record reveals that this is a contentious estate case. The Deceased had four children, the Personal Representative, Mary V. Schorn, Charles A. Schorn, and Virginia A. Chandler.

The order admitting the Deceased's will to probate was entered in March of 2004. In November of 2005, the Personal Representative filed a motion seeking his fees as the personal representative in the amount of $9,438.50, and also filed a motion to make final distributions. In July of 2006, Mary V. Schorn and Charles A. Schorn responded to the motions disputing the amount claimed by the Personal Representative, among other things. In September of 2006, the Personal Representative filed a revised motion to set fees, and an amended motion to make final distributions.

On January 30, 2007, the Trial Court entered an Order to Approve Settlement of All Parties finding and holding, *inter alia*:

1) John H. Schorn is the qualified Personal Representative of this estate.

2) The estate is solvent.

3) Charles Schorn was indebted to the testator in the amount of $7,541.24 which amount is to be subtracted from Charles Schorn's distributable share.

4) The parties agreed that Donald B. Roe should be awarded an attorney's fee in the amount of $10,217.54; Ann Mostoller should be awarded an attorney's fee in the amount of $2,000.00, and John Schorn should be awarded a personal representative's fee in the amount of $13,284.81.

5) That the parties have agreed to resolve all other issues and submit an agreed final accounting.

The record before us reveals, however, that the agreement to "resolve all other issues and submit an agreed final accounting" did not end the disputes between the parties. In March of 2008, Charles A. Schorn and Mary V. Schorn filed a motion seeking an accounting alleging "that at a hearing on September 15, 2006, the Personal Representative and Petitioners announced that they had resolved all issues among them; that following that hearing, the Personal Representative provided an accounting, which is not complete and in

particular does not include all of the bank records for all of the assets of the estate." By order entered October 16, 2008 the Trial Court granted the motion for an accounting.

On October 22, 2008, the Personal Representative filed a Petition To Close Estate. Charles A. Schorn and Mary V. Schorn filed a response to the Petition To Close Estate alleging, among other things, that they "attempted to analyze the records provided and, despite spending many hours, are unable to determine what funds came into the hands of the Personal Representative, where the funds went, what was spent and what is currently on hand…." Charles A. Schorn and Mary V. Schorn further sought a hearing on the issue of whether the Personal Representative should continue to serve in that capacity. The Trial Court entered an agreed order on April 15, 2009 denying the motion to remove the Personal Representative and stating "All other Orders of the Court remain in effect and the Estate should proceed to close as soon as possible."

On July 22, 2009, Mary V. Schorn and Charles A. Schorn filed a response to the Personal Representative's Petition To Close Estate excepting to the Personal Representative's accounting. On July 29, 2009, the Personal Representative filed a motion for disbursements and distribution. The Trial Court held a hearing on the Petition To Close Estate, the response to the Petition To Close Estate, and the motion for disbursements and distribution, and entered its order on September 28, 2009 finding and holding, *inter alia*:

> that the funds in the amount of $15,000.00 that were segregated by the Personal Representative shall be returned to the estate and included in the final accounting, that the Personal Representative shall be assessed for the loss to the estate in interest for funds removed by him from the estate prior to closing, that the evidence provided by the Personal Representative for work done on the house is not supported by the evidence and the rate of pay requested of $41.85 is not reasonable and that many of the activities provided in the accounting introduced did not benefit the estate such that the Personal Representative shall be allowed the sum of $6,500.00 for that work, that the Personal Representative shall be allowed an additional $2,500.00 for his Personal Representative fee, that the attorney for Mary V. Schorn and Charles A. Shorn [sic], Ann Mostoller, shall be allowed an additional fee of $4,000.00 for a total of $6,000.00 from the estate, and that the final accounting and distribution shall be completed in sixty days from the date of this hearing or the court will take steps to remove the Personal Representative.

It is therefore, **ORDERED, ADJUDGED** and **DECREED**, as follows:

* * *

7. That the final accounting and disbursements shall be completed within 60 days or, upon motion, this Court will take steps to remove the Personal Representative.

The Personal Representative filed a motion to alter or amend the Trial Court's September 28, 2009 order, and also filed a motion to require Mary V. Schorn to turn over certain items of personal property.

On January 6, 2010, Mary V. Schorn and Charles A. Schorn filed a petition to remove the Personal Representative. Mary V. Schorn also filed a motion to dismiss the Personal Representative's motion to turn over certain items of personal property.

The Trial Court held a hearing on the motion to alter or amend, the motion to require Mary V. Schorn to turn over certain items, Mary V. Schorn's motion to dismiss the motion to turn over items, and the petition to remove the Personal Representative, and entered its order on April 13, 2010 finding and holding, *inter alia*:

2. The Personal Representative's Motion to Require Mary V. Schorn to Turn Over Certain Items to the Personal Representative is granted. Consequently, it is hereby ordered, adjudged, and decreed that Mary V. Schorn shall, within 30 days, **produce and turn over [to] the Personal Representative the list of items that she removed from the Cedar Road residence for the purpose of appraisal,** including a list of items taken but not appraised, the appraisal of Joe Rosson relative to the said items; and any receipts for any reimbursements claimed. It is further ordered that Mary Schorn may return certain items to the Personal Representative by delivery to the office of Donald K. Vowell, the Personal Representative's attorney.

3. As for the Petition to Remove Personal Representative, it is hereby ordered, adjudged and decreed that the Court will allow the Personal Representative 30 days to which to [sic] compile a complete list of where the estate monies are and what has been spent since the last accounting was provided to the beneficiaries, and a period of 90 days in which to close and settle the Estate, and if the Estate is not closed and settled within the said time period of 90 days, the Court will on the 91st day remove Mr. Schorn and appoint somebody who can effectuate the proper conclusion of the probate of this estate.

The Personal Representative appeals the April 13, 2010 Order to this Court.

**Discussion**

In his brief on appeal, the Personal Representative raises nine issues on appeal, including whether this Court has jurisdiction to hear the appeal. The dispositive issue is whether this Court has jurisdiction to consider the appeal.

The Tennessee Rules of Appellate Procedure define an appeal as of right from a final judgment as follows:

> In civil actions every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right. Except as otherwise permitted in Rule 9 and in Rule 54.02 Tennessee Rules of Civil Procedure, if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties.

Tenn. R. App. P. 3(a).

No party to this appeal has filed an application for an interlocutory appeal pursuant to Rules 9 or 10 of the Rules of Appellate Procedure. Additionally, the order appealed from the Trial Court was not made final pursuant to Tenn. R. Civ. P. 54.02.[1]

A final judgment is "one that resolves all the issues in the case, 'leaving nothing else for the trial court to do.'" *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) (quoting *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)). "[A]ny trial court order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not final or appealable as of right." *State ex rel. Garrison v. Scobey*, No. W2007-02367-COA-R3-JV, 2008 WL 4648359, at *5 (Tenn. Ct. App. Oct. 22, 2008), *no appl. perm. appeal filed*. This Court does not have subject matter jurisdiction to adjudicate an appeal if there is no final judgment. The Tennessee Supreme Court has recognized that "[u]nless an appeal from an interlocutory order is provided by the rules or by statute, appellate courts have jurisdiction over final judgments only." *Bayberry*

---

[1] "Rule 54.02 requires, as a prerequisite to an appeal as of right of an interlocutory order, the certification by the trial judge that the judge has directed the entry of a final judgment as to one or more but fewer than all of the issues of the parties, and that the court has made an express determination that there is no just reason for delay." *In re Estate of Henderson*, 121 S.W.3d 643, 646 (Tenn. 2003).

*Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990). *See also Ruff v. Raleigh Assembly of God Church, Inc.*, 241 S.W.3d 876, 877 at n.1 (Tenn. Ct. App. 2007).

The parties in the case now before us cite to two cases with regard to the issue of whether the judgment appealed from constitutes a final judgment, *In re: Estate of Ridley*, 270 S.W.3d 37 (Tenn. 2008); and *In re: Estate of Henderson*, 121 S.W.3d 643 (Tenn. 2003). Both of these cases, however, are distinguishable from the instant case.

In *In re: Estate of Ridley*, our Supreme Court compared the trial court's order to the pleadings, and held that the trial court's order construing a will was a final judgment because it adjudicated all of the claims, and all of the rights and liabilities of the parties. *In re: Estate of Ridley*, 270 S.W.3d at 41. The *Ridley* Court instructed that "the appeal of a will-construction suit should be initiated within thirty days of the trial court's judgment construing the will." *Id*. at 42.

In the case of *In re: Estate of Henderson*, the trial court rejected three purported wills, and held that the deceased had died intestate. *In re: Estate of Henderson*, 121 S.W.3d at 645. On appeal, our Supreme Court held that this Court had correctly held that we did not have jurisdiction to hear the *Estate of Henderson* appeal because the notice of appeal was not filed within thirty days of the order rejecting the three wills and holding that the deceased had died intestate. *Id*. Our Supreme Court instructed:

Finally, we wish to note that we agree with the plaintiff's observation that it is important to establish a degree of certainty as to the finality of intestacy orders so that parties know when to appeal. To that end, we embrace an observation made by a court more than a century ago: "When a will has been propounded by a party interested, and fairly rejected on the merits, it would defeat the policy of the law, and be productive of many mischiefs, if it could be again propounded by the same party or by others who might be interested, and the contest thus renewed from time to time." *Schultz v. Schultz*, 51 Va. (10 Gratt.) 358, 60 Am. Dec. 335 (1853). It seems to us that once a court has determined that a will should not be admitted to probate, it would indeed be "productive of many mischiefs" to allow a contest essentially raising the same issues after the time for appeal has passed. Thus, a judgment rejecting a will "must be regarded as a judgment against all claiming under it … which, being adjudications upon the subject matter, are regarded as final and conclusive not only in the courts in which they are propounded, but all others in which the question arises." Jack W. Robinson, Sr. and Jeff Mobley, 1 *Pritchard on the Law of Wills and Administration of Estates* § 340 (5th ed. 1994). Accordingly, we hold that when a court rejects all purported wills

-6-

submitted for probate and enters an order finding that the deceased died intestate, the order constitutes a final order for purposes of appeal.

*Id*. at 646-47.

The case now before us is neither a suit to construe a will nor does it involve an order rejecting a will or wills submitted for probate. Instead, the order from which the Personal Representative attempts to appeal involves issues regarding an interim accounting with regard to a will which already has been accepted for probate.

A careful and thorough review of the Trial Court's April 13, 2010 order shows that the Trial Court ordered Mary V. Schorn to turn over to the Personal Representative a list of items removed from the estate along with the appraisal of these items, which, ostensibly, the Personal Representative will need in order to compile a final estate accounting. The April 13, 2010 order also orders the Personal Representative to "compile a complete list of where the estate monies are and what has been spent since the last accounting was provided to the beneficiaries …," or, in other words, a final accounting. Once this accounting is prepared, the other parties to this suit will have the right to file exceptions to this accounting should they so choose.

It is clear that the Trial Court's April 13, 2010 order is an order dealing with an interim accounting, and that this order does not adjudicate all the claims, and all the rights and liabilities of all parties to the action. The parties have not cited us to, nor have we found in our own research, any support for the proposition that an interim accounting is a final judgment for purposes of determining whether this Court has jurisdiction. We, therefore, hold that the Trial Court's April 13, 2010 order is not a final order, and we dismiss this appeal for lack of jurisdiction.

Costs on appeal are taxed to the Appellant, the Estate of Mary Pauline Stumpe Schorn, John H. Schorn, Personal Representative, and its surety, for which execution may issue, if necessary.

_____
D. MICHAEL SWINEY, JUDGE

-7-